



FILED

SEP 10 2021

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

MICHAEL POSTLE
2219 Catherwood Way
Sacramento, CA 95835
916-790-4112

Debtor, In Pro Per

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

| In re: | ) | Case No.: 21-22632-C-7 |
|---|---|---|
| MICHAEL POSTLE, | ) | MOTION TO DISMISS INVOLUNTARY |
| Debtor | ) | BANKRUPTCY FILING |

## INTRODUCTION

I respectfully request the court to reject Mr. Randazza's request to bankrupt me on the basis that the petition is a "bad faith filing' which was filed punitively, the petition fails to meet the requirements for numerosity, and that the petitioner lacked the qualifications to file an involuntary petition as the time of its filing.

## BACKGROUND

This involuntary bankruptcy filing is simply the latest effort in a long line of harassment, defamation, doxing, and intimidation carried out by Mr. Randazza against me, in retaliation for my refusal to recant my complaint in court, which has resulted, in part, to his pro hoc vice in the high-profile, Alex Jones case being denied. It is my understanding that he is currently being investigated for witness tampering/intimidation in this matter.

However, this adversarial relationship started with a different case. I am a professional poker player of some repute and have been for over seventeen years. This is a career that I love and has allowed me to support my ten-year-old daughter, of whom I have custody. Mr. Randazza's client, Veronica

Brill, a **former** ▮▮▮▮ Sacramento poker commentator, made a claim that she thought I might have cheated at poker, because I was on a winning streak. This accusation blew up in the poker community and her claim quickly went from she "thought" I might be cheating to she could "prove" that I was cheating. Because of her claims, other poker influencers and ▮▮▮▮ shows gave her a platform. Her highest consumed content occurred on episodes where she talked about me and where she announced that she was going to prove that I cheated.

By this point, there were thousands of pieces of content about me online, defaming me, threatening myself and my family, all generated by Ms Brill's commentary and the comments of her fan base. I quickly became a hated figure in my industry and the butt of supposition and jokes, nationwide.

Ms Brill then filed a case against myself, Stones Casino, and a Casino floor manager claiming that I had cheated and that the Casino and their employee were either aware of the cheating or complicit in the cheating. In her suit, she demanded $30 million dollars. *Brill v. Postle*, No. 2:19-cv-02027 WBS AC (E.D. Cal. Jun. 3, 2020) and invited anyone who had played against me to join the suit.

Eventually however, she was compelled to prove that I had cheated. During the dates where she claimed that I cheated, my win rate across all hands played was a respectable 79%. However, Ms Brill and supporters of her claim, cherry-picked hands, rejected dozens of hands where I had lost and instead fabricated a 94% win rate.

Meanwhile, Stones Casino conducted an internal investigation with Mike Lipman , an attorney and the former chief attorney for the fraud office of the US Attorney of the Southern District of California. He found no evidence of cheating. After that investigation found nothing, both the Department of Justice AND a forensic firm, Stroz Friedberg, probably one of the most well-respected firms in the county focusing on computer fraud, did their own separate investigations. They also found nothing and the case was dismissed.

Ms Brill, who was attempting to brand herself as a poker "influencer" based on her claim that she was a "whistleblower," refused to accept the ruling, blasting the DOJ and the court, and increased her

defamation against me, creating videos, going on poker podcasts, and creating social media commentary claiming that I was a cheater.

In response, I filed a defamation suit against her. She hired Mr. Randazza and they filed an anti-SLAPP. *Postle vs Brill 2020-00286265-CU-DF*

I parted ways with my attorney and was unable to secure new counsel in part because of Mr. Randazza's behavior. He has a lengthy history of intimidating and defaming not only the opposition, but also other attorneys on social media. Several attorneys said that it just wasn't worth the hassle. Since I had been banned from casinos on the basis of Ms Brill's unsubstantiated claims, and I had received so many threats of violence against me should I return to the casinos, I was unable to earn a living and unable to afford the eye-watering fees that lawyers wanted to take on a defamation case.

I started working with the HONR Network, a non-profit organization founded by Lenny Pozner whose 6-year-old son Noah was the youngest victim of the Sandy Hook School Shooting. His organization helps to remove harassing and defamatory content online and to find legal counsel for people who are being abused online. I had no idea that Mr. Randazza had a vendetta against the HONR Network.

During a phone call that was supposed to be to negotiate an extension while HONR assisted me in finding legal counsel, I had asked Alexandrea Merrell, the Director of Public Relations and Policy for the HONR Network to join the call and explain to Mr. Randazza why I needed some extra time. Instead of a professional discussion of the time needed, Mr. Randazza erupted at Ms Merrell yelling and screaming and calling her names, including a "fucking bitch" and a "fucking cunt." Ms Merrell and myself were stunned and hung up the phone.

I learned later that his issue was that he had been denied pro hoc vice in the Alex Jones case in Connecticut, part of a trial concerning Lenny Pozner and the Sandy Hook school shooting. In an article entitled *Connecticut Judge: Attorney Marc Randazza Is Too Unethical To Represent Alex Jones* which was published in the Huffington Post, I discovered some of the other actions that he had

taken against other opposition in other cases and I was determined not to be intimidated by him. I filed a complaint, detailing his behavior on the call, which was clearly an attempt to prevent me from getting any legal assistance at all. He also went to the blogs and social media and made claims about me and about Ms Merrell.

Unable to get legal counsel, I decided to withdraw my case with hopes to re-start once I could find counsel. Mr. Randazza, who at that point had filed an anti-SLAPP, then submitted 200 pages to the court in support of a nearly $70,000.00 legal bill. His submission seemed to be mostly articles where he claimed that he is a preeminent First Amendment lawyer. In response, I filed a response detailing his behavior on the call, his lengthy disciplinary record, bar suspensions, and history of billing fraud, and the fact that he had failed to disclose $27,000.00 in money he had already received for legal fees as part of a GoFundMe campaign which named one of his paralegals as the receiving party.

The court ruled that Mr. Randazza was not entitled to nearly $70,000.00 in legal fees, awarding him $27,745.00. **Exhibit #1 Court Ruling Rejecting Mr. Randazza's Fee Request** Mr. Randazza took to social media, doxing me, and posting a video of men getting beat up, essentially claiming that that is what happens when you mess with him.

By this time, Ms Merrell, who had been out of commission after a heart attack on April 1st, had alerted the attorneys for Lenny Pozner of the behavior of Mr. Randazza against the two of us on the phone call and his continued animosity towards the Pozner family and the HONR Network. Mr. Randazza had been thrown off the Alex Jones case in Connecticut, but was still attempting a pro hoc vice in the Texas part of the case.

The attorneys for the plaintiffs had already created a compendium of inappropriate, illegal, and unprofessional conduct that Mr. Randazza had taken against other victims including racial and anti-Semitic slurs and threats, and asked if I would be willing to include my complaint in that list. I agreed, providing a copy of my previous complaint just days before Mr. Randazza filed this involuntary bankruptcy petition on July 21, 2021.

LEGAL ARGUMENT I

**Bad Faith Filing**

Mr. Randazza engaged in a course of behavior that included threatening other court action against me, if I didn't recant my statement to the court in Texas and lie to them about what transpired. I alerted the court and provided as a supplemental brief to the court. **Exhibit #2 Supplemental Brief**

After review, the court denied Mr. Randazza's pro hoc vice motion in Texas **Exhibit #3 Denial of Pro Hoc Vice Request**

I believe that it is clear that Mr. Randazza's motivations are punitive and in bad faith. However, to further illustrate this position, Mr. Randazza filed this involuntary bankruptcy case against me on July 21, 2021, thirty-six (36) days after he was awarded fees. However, at no time in those 36 days (or indeed ever) did Mr. Randazza send me a bill or request any sort of payment arrangement. Mr. Randazza also didn't alert me that he had filed an involuntary bankruptcy petition against me and I was never served. I found out about the petition because he went to social media and to poker blogs, claiming that I was a deadbeat and was "on the run" from paying Ms. Brill. I reached out to the court on August 13, 2021 asking for an extension so that I could respond.

This situation has been extremely stressful. I am not a lawyer, though I am certainly learning. *U.S. Bank, Nat'l Ass'n v. Rosenberg*, 2018 U.S. App. LEXIS 21145, at *2 (3d Cir. July 31, 2018) "The filing of an involuntary bankruptcy petition has devastating consequences for the putative debtor. The Bankruptcy Code's good faith filing requirement, which has strong roots in equity, seeks to prevent the improper filing of involuntary petitions and ensures that the Bankruptcy Code's careful balancing of interests is not undermined by petitioners whose aims are antithetical to the basic purposes of bankruptcy."

I ask the court to reject Mr. Randazza's involuntary bankruptcy filing as it is based on "bad faith" and is punitive in nature and dismiss the case.

LEGAL ARGUMENT II

**Numerosity**

Bankruptcy Rule 1003(b) states that when fewer than three (3) creditors file an involuntary petition of bankruptcy, they can only be successful if they can prove that there are fewer than twelve (12) qualifying creditors. **Exhibit # 4 Creditors List** I have attached a list of seventeen (17) qualifying creditors.

An involuntary petition that does not meet the 12-creditor numerosity requirement, must be dismissed. *Atlas Mach. & Iron Works, Inc. v. Bethlehem Steel Corp.,* 986 F2d. 709 (4th Cir. 1993). I ask the court to reject Mr. Randazza's involuntary bankruptcy filing on the grounds that it fails to meet the numerosity requirements.

LEGAL ARGUMENT III

**Lack of Qualification**

In order to qualify to petition the court to force me into bankruptcy, the petitioner must prove that he/she is qualified under the bankruptcy code by demonstrating that the claim, at the time of its filing is 1) not contingent on liability; 2) not subject to a bona fide dispute as to liability or amount, and 3) amounts to at least $15,325.00 more that the value of any lien on property securing a claim. 11 U.S.C. s 303(b).

Mr. Randazza's client Veronica Brill was awarded roughly $27,745.00 in legal fees in an anti-SLAPP motion on June 15, 2021. However, I have a statutory 60 days to appeal that judgement. Mr. Randazza filed this bankruptcy petition on July 21, 2021, a mere 36 days after the judgement and well within the 60 days that I had to appeal. Until the appeal time expired on August 13, 2021, I had the right to dispute the amount and in fact the entire judgement. Since when filed, the amount in question WAS potentially subject to a bona fide dispute as to both liability and amount, Mr. Randazza did not have the legal standing to file the involuntary bankruptcy petition.

6

MOTION TO DISMISS

It was my intention to file an appeal against the legal fee award. Mr. Randazza originally asked the court for nearly $70,000.00 in legal fees for an anti-SLAPP petition. He also has a well-documented history for billing fraud, which has resulted in his receiving disciplinary action in other courts. He had also accepted over $27,000.00 to cover his legal fees through a GoFundMe campaign and then failed to mention that in his fee filing request.

As I am in a position where I have had to act as my own lawyer, in part due to other behaviors of Mr. Randazza, I filed a petition outlining why I disputed his claims, but did so after the filing date. The court ruled against Mr. Randazza, without seeing my filing and assessed that he was entitled to $27,745.00 in total, not the $70,000.00 he requested. As he had already been paid $27,000.00 from the GoFundMe, I intended to appeal when I received this petition of involuntary bankruptcy, which is a part of a pattern of intimidation.

In *Ransome Grp. Investors I, LLLP, 424 B.R. 547, 511 (Bankr. M.D. Fla. 2009)* the courts apply an objective test to determine if a claim in an involuntary bankruptcy can legitimately be disputed. At the time of the filing, I certainly had an objective basis for a dispute to the validity in amount and substance of this debt, as I had previously filed. Since at the time of the filing, the involuntary bankruptcy petition WAS 1) contingent on liability; and 2) WAS still in the time frame to make the filing subject to a bona fide dispute as to liability or amount, Mr. Randazza lacked the required standing to bring an involuntary petition against me and on that basis the petition should be rejected.

CONCLUSION

For the reasons set forth above, I respectfully request that the Court deny the petitioner's request for involuntary bankruptcy. Mr. Randazza has exhibited incredibly unprofessional and unethical behavior and is using the bankruptcy as a personal vendetta weapon against me. He has attempted to use the bankruptcy proceeding to shame me publicly, and place his debt as superior over my other at minimum 15 unrelated, legitimate creditors. By filing a petition for involuntary bankruptcy a mere thirty-six (36) days after the creation of the debt, he makes a mockery of the bankruptcy system which is supposed to be used to create relief when no other means exist.

1
2
3
4   Dated: September 9, 2021          By: _M. Ross_____
5                                    MICHAEL POSTLE
                                     Debtor, In Pro Per
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOTION TO DISMISS

EXHIBIT 1     COURT RULING ON FEES

EXHIBIT 2     SUPLEMENTAL BRIEF

EXHIBIT 3     DENIAL OF PRO HOC VICE

EXHIBIT 4     LIST OF CREDITORS

**NOTICE:**

To request limited oral argument on any matter on this calendar, you must call the Court at (916) 874-7858 (Department 53) by 4:00 p.m. the court day before this hearing and advise opposing counsel. If no call is made, the tentative ruling becomes the order of the court. Local Rule 1.06.

Until further notice, NO IN-PERSON APPEARANCES WILL BE PERMITTED. All court users are required to appear via Zoom [which includes telephonic and video options]. NO COURTCALL APPEARANCES WILL BE ACCEPTED. The Department 53 Zoom link is http://saccourt.zoom.us/my/dept53.54a . The Department 53 Zoom ID is: 841 204 6267. To appear on Zoom telephonically, call (888) 475-4499 or (877) 853-5257 (toll-free) and enter the Zoom ID referenced above.

Consistent with Local Rule 1.06(B), any party requesting oral argument on any matter on this calendar must comply with the following procedure.

To request oral argument, on any matter on this calendar, you must call the Department 53 clerk at (916) 874-7858 by 4:00 p.m. the court day before the hearing and advice opposing counsel. At the time of requesting oral argument, the requesting party shall leave a voice mail message to advise the clerk that it has notified the opposing party of the following: a) its intention to appear and b) that opposing party may appear via Zoom using the Zoom ID indicated above. If no request for oral argument is made, the tentative ruling becomes the final order of the Court. Local Rule 1.06.

The hearings will also be live-streamed on the Court's YouTube page for the benefit of the public. Although the hearings will be live-streamed on the Court's YouTube page, the broadcast will not be saved/preserved. Thus, if any party wishes to preserve the hearing for future use, a court reporter will be required.

During the COVID-19 emergency, the Court will supply a court reporter upon request. Any party desiring a court reporter shall so advise the clerk upon request for oral argument. Unless a fee waiver has been granted, the reporter's fee must be paid to the Court prior to the hearing. Local Rule 1.12 and Government Code § 68086.

**Department  53**
**Superior Court of California**
**813 Sixth Street, 2nd Floor**
**Shama H. Mesiwala, Judge**
**Staff, Clerk**
**P. Lopez, Bailiff**

**Wednesday, June 16, 2021, 1:30 PM**

Item   1      **2015-00183885-CU-CD**

**Lori Dosty vs. Towne Development of Sacramento**

Nature of Proceeding:   Motion to Dismiss

Filed By:   Ahmad, Islam M.

Defendants/Cross-Complainants Towne Development of Sacramento, Inc. and Elk Grove Waterworks, LLC (collectively, "Towne") move to dismiss Plaintiff Anna Chetcuti -McCorkmack's complaint for failure to bring to trial pursuant to Code of Civil Procedure section 583.360. The motion is ruled on as follows.

Towne's request for judicial notice is granted.

Item  12  **2020-00285047-CU-MC**

**Soraya Maria Rigor vs. Estate of Leo Charles Curry**

Nature of Proceeding:   Motion to Set Aside Conveyance of Real Property

Filed By:   Rigor, Soraya

Plaintiffs Soraya Rigor and Estate of Erna Lue Rikhi's "motion to set aside conveyance of property and notice for order permitting the filing of a first amended complaint" is DROPPED.

Code of Civil Procedure requires 16 court days' notice of motion, with additional calendar days based on method of service. Here, the motion was filed on May 24, 2021, which provides 15 court days' notice.

Additionally, Plaintiffs have not filed a proof of service of the motion. California Rule of Court 3.1300 requires that proof of service of the moving papers must be filed no later than five court days before the time appointed for the hearing. Defective service deprives the Court of jurisdiction to act. (See *Lee v. Placer Title Co.* (1994) 28 Cal.App.4th 503, 509.)

Accordingly, the motion is DROPPED.

The minute order is effective immediately. No formal order pursuant to CRC Rule 3.1312 or further notice is required.

---

Item  13  **2020-00286265-CU-DF**

**Michael Postle vs. Veronica Brill**

Nature of Proceeding:   Motion for Attorney Fees

Filed By:   Shepard, Alex J.

Defendant Veronica Brill's motion for costs and attorneys' fees in connection with defending the SLAPP (strategic lawsuit against public participation) suit and filing the anti-SLAPP motion is unopposed and is ruled on as follows.

Defendant seeks $67,677.50 in attorneys' fees and $961.91 in costs associated with defending the SLAPP suit filed by Plaintiff.

The Court acknowledges the "supplemental brief" filed by Plaintiff on June 9, 2021. (ROA 64.) The filing was untimely and will not be considered by the Court on that basis. Further, even if the Court were to consider the filing, Plaintiff failed to provide a declaration or request for judicial notice, etc., authenticating the purported evidence attached.

Plaintiff voluntarily dismissed his lawsuit on April 1, 2021, before the hearing on the anti-SLAPP filed by Defendant was heard. On April 20, 2021, the Court dropped the anti-SLAPP motion, without prejudice to Defendant filing a motion for attorneys' fees and costs incurred in defending this SLAPP lawsuit, pursuant to Code of Civil Procedure section 425.16(c).

Where the plaintiff voluntarily dismisses an alleged SLAPP lawsuit while a special motion to strike is pending, the trial court has discretion to determine whether the defendant is the prevailing party for purposes of attorney's fees under Code of Civil Procedure section 425.16(c). The voluntary dismissal of a complaint before the hearing on an anti-SLAPP motion creates a presumption that the defendant is the prevailing party on the anti-SLAPP motion. The defendant need not obtain a ruling from the court on the motion to strike in order to prevail for purposes of attorneys' fees. (*Coletrain v. Shewalter* (1998) 66 Cal.App.4th 94, 106-107.) The Court finds that Defendant is the prevailing party in this action and is therefore entitled to attorneys' fees and costs pursuant to section 425.16(c). Plaintiff has not opposed this motion, or otherwise dispelled the presumption that Defendant is the prevailing party.

The anti-SLAPP statute provides: "In any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. (Code Civ. Proc. § 425.16(c).) An awar of attorney's fees to a prevailing defendant is mandatory. (*Ketchum v. Moses* (2001) 24 Cal.4th 1121, 1131 ("[A]ny SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees."); *Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 685.) Defendant is entitled to recover attorney's fees and costs she reasonably incurred in extricating herself from this action. (*Wilkerson v. Sullivan* (2002) 99 Cal.App.4th 443, 446 (the statute is broadly construed as to effectuate the legislative purpose of reimbursing the prevailing defendant for expenses incurred in extricating herself from a baseless lawsuit).)

Under California law, in determining the amount of reasonable attorney fees to be awarded under a statutory attorney fees provision, the court begins by calculating the "lodestar" amount. (*Bernardi v. County of Monterey* (2008) 167 Cal.App.4th 1379, 1393; *Cruz v. Ayromloo* (2007) 155 Cal.App.4th 1270.) The "lodestar" is "the number of hours reasonably expended multiplied by the reasonable hourly rate." (*Bernardi*, 167 Cal.App.4th at 1393; *Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140,154.) To determine the reasonable hourly rate, the court looks to the "hourly rate prevailing in the community for similar work." (*Bernardi*, 167 Cal.App.4th at 1394.) The California Supreme Court has further instructed that attorney fee awards "should be fully compensatory." (*Id.*, citing *Ketchum*, 24 Cal.4th at 1133.) Thus, an attorney fee award should ordinarily include compensation for all of the hours reasonably spent, including those relating solely to the fee. (*Id.* at 1394.) This lodestar fee may then be adjusted to account for "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, and (4) the contingent nature of the award." (*Id.*)

Fee award amounts are matters within the trial court's discretion: the "trial judge is the best judge of the value of professional services rendered in h[er] court, and while h[er] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." (*Ketchum*, 24 Cal.4th at 1132; accord *PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1096.) The Court will reduce the hours it determines were excessive or not supported. (*Levy v. Toyota Motor Sales, U.S.A., Inc.* (1992) 4 Cal.App.4th 807, 816 (party seeking attorney fees has the "burden of showing that the fees incurred were 'allowable,' were 'reasonably necessary to the conduct of litigation,' and were 'reasonable in amount'"); *Christian Research Institute v. Ahor* (2008) 165 Cal.App.4th 1315, 1326-1329.)

The billing records that support this motion are attached as Exhibit 3 to the motion, and supported by the declaration of Marc J. Randazza, which is attached as Exhibit 2 to the motion. The billing records reflect the following rates and amount of time requested: $800/hour for Mr. Randazza for 32.3 hours; $450/hour for attorney Alex J. Shepard for 80.5 hours; $200/hour for law clerk Trey Rothell for 1.1 hours; $200/hour for law clerk Bryttni Yi for 1.2 hours; $175/hour for paralegal Cassidy Curran for 1.75 hours; $175/hour for paralegal Jasmyn Montano for 1.5 hours; and $175/hour for paralegal Heather Ebert for 22.6 hours. In total, the motion seeks compensation for 142.9 hours of time and $67,677.50 in fees. The records submitted also reflect $961.91 in costs.

The Court finds the costs requested to be reasonable, but finds the fees requested to be excessive. For example, there are multiple entries totaling 33.5 hours for drafting a memorandum regarding the initial draft of the anti-SLAPP motion. The Court awards 15 hours at $800 for Mr. Randazza; 25 hours at $450 an hour for Mr. Shepard; and 20 hours of paralegal time at the rate of $175 per hour. In total, the Court awards $26,783.50 in attorneys' fees and $961.91 in costs, for a total of $27,745.

Defendant is directed to submit an order for the Court's signature.

---

Item  14   **2020-00286709-CU-BC**

**Campus Plaza Associates vs. Kirk Austin**

Nature of Proceeding:   Motion to Compel Answers to Form Interrogatories

Filed By:   Piser, Steven B.

Plaintiff Campus Plaza Associate's motion to compel answers to form interrogatories nos. 15.1, 17.1, and 50.1-50.3, verification to all responses, and sanctions from Defendant Gayle Gacusan is ruled on as follows.

Moving counsel's notice of motion does not provide notice of the Court's tentative ruling system, as required by Local Rule 1.06. Moving counsel is directed to contact Defendant's counsel and advise counsel of Local Rule 1.06 and the Court's tentative ruling procedure and the manner to request a hearing. If moving counsel is unable to contact Defendant's counsel prior to hearing, moving counsel is ordered to appear at the hearing via Zoom or by telephone.

Plaintiff served form interrogatories to Defendant on February 3, 2021. (Piser Decl.) On April 12, 2021, Defendant served unverified responses but did not respond to form interrogatory nos. 15.1, 17.1, and 50.1-50.3. (*Id.*) On April 15, 2021, Plaintiff's counsel sent meet and confer correspondence requesting verifications by April 26, 2021. (*Id.*, Exh. A.) Defendant did not respond.

Plaintiff requests responses to form interrogatory nos. 15.1, 17.1, and 50.1-50.3, and verifications to all discovery. Plaintiff also seeks sanctions in the amount of $825.

Defendant filed a "non-opposition," which states the motion is moot because updated responses have been served. The motion is deemed made at the time it is filed, and Plaintiff is entitled to a ruling on the motion.

## D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | 459th DISTRICT COURT |
| OWEN SHROYER, | § | |
| *Defendants* | § | |

## D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| *Plaintiffs* | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | 459th DISTRICT COURT |
| AND FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants* | § | |

## D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| AND FREE SPEECH SYSTEMS, LLC, | § | 459th DISTRICT COURT |
| *Defendants* | § | |
| | § | |

**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO MOTION FOR PRO HAC VICE REGARDING WITNESS TAMPERING IN THIS LAWSUIT**

1

Plaintiffs have filed this Supplemental Response because after the filing of their initial brief, Mr. Randazza has been repeatedly threatening one of the witnesses who provided evidence included with Plaintiffs' brief. The witness contacted Plaintiffs' counsel expressing his grave alarm about these threats, which included highly improper and potentially felonious threats of criminal prosecution and civil litigation against the witness. As such, Plaintiffs file this brief to bring this repeated witness intimidation to the Court's attention.

## FACTS

Plaintiffs' brief opposing Mr. Randazza's appearance included declarations from March 2021 by Alexandrea Merrell and Mike Postle discussing an astonishingly abusive phone call they had with Mr. Randazza. In the week after the filing of those declarations, Mr. Randazza began repeatedly contacting Mr. Postle by email, issuing menacing threats about perjury. The events transpired as follows:

1. First, on July 29, 2021, Mr. Randazza emailed Mr. Postle and threatened a civil lawsuit. Mr. Randazza stated, "It is my intention to file a lawsuit against you for violation of Cal. Penal Code § 637.2."[1] Mr. Randazza threatened this lawsuit due to Mr. Postle allegedly recording Mr. Randazza's calls. Mr. Randazza stated, "I am willing to grant you 24 hours in which to try to resolve this without filing suit against you."[2]

---

[1] Exhibit 1, Declaration of Mike Postle, p. 3.
[2] *Id.*

2.      Mr. Postle responded by denying that he had recorded any calls, and asked Mr. Randazza to leave him alone, stating that he "[didn't] see a reason for you to contact me."[3]

3.      Mr. Randazza continued to email Mr. Postle. In his next email, Mr. Randazza stated, "Well, you both lied in claiming that I called her a 'cunt.'"[4] Mr. Randazza told Mr. Postle, "So, how do you want to handle your perjury?"[5]

4.      Mr. Postle responded again, clearly upset by Mr. Randazza's accusation and his threat. Mr. Postle again asked Mr. Randazza to cease contact:

> As I have said before, I find you beyond unprofessional and yet again, there's no need to have contact with you unless it is specifically for court business. These threats are NOT court business.[6]

5.      Mr. Postle also stated, "I didn't lie, you did say that."[7] Mr. Postle expressed his dismay that Mr. Randazza was "coming at me out of personal anger with a clear vendetta."[8] Mr. Postle then repeated his request that Mr. Randazza cease contact:

> There's really no reason to contact me other than to continue harassing and threatening me. You've admitted that "because things have been made personal" and that "it's a big mistake on my part," it's very clear why you're still coming at me.[9]

---

[3] *Id.,* p. 4
[4] *Id.,* p. 5.
[5] *Id.*
[6] *Id.,* p. 6.
[7] *Id.*
[8] *Id.*
[9] *Id.*

6.      Mr. Randazza refused to honor Mr. Postle's second demand to cease communicating with him about his declaration. Instead, Mr. Randazza again wrote to Mr. Postle, demanding that Mr. Postle "send a letter to the court" recanting his testimony.[10] Otherwise, Mr. Randazza pledged "to take action" and stated that he was "not going to let that rest."[11] Mr. Randazza also added:

> Indeed, I did say "fucking liar" – I will never deny that. But, I certainly did not call her a "fucking bitch" nor a "fucking cunt" (There is a non zero chance that I *thought* those things, but they never came out of my mouth)[12]

7.      Mr. Randazza insisted that "I won't let this go."[13] Mr. Randazza then told Mr. Postle, "So, your move."[14] Mr. Randazza closed by threatening Mr. Postle, stating, "You can dig in...and enjoy the 'effect' as you put it."[15]

8.      As Mr. Postle noted in his email, Mr. Randazza had previously emailed Mr. Postle on June 15, 2021, telling Postle, "You decided to make it personal with me. That wasn't smart." A copy of that email is also attached to Postle's declaration.[16]

9.      In addition, a few weeks after Mr. Postle gave Plaintiffs' counsel his March 2021 declaration about his call with Mr. Randazza, Mr. Postle was harassed again when Mr. Randazza posted a public message to Mr. Postle on Twitter which

---

[10] *Id.*, p. 7-8.
[11] *Id.*
[12] *Id.*, p. 8.
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*, p. 11.

included a court document with his home address and phone number along with a link to a video of a group of mafiosos beating up a man in a bar.[17]

10.      In his attached declaration, Mr. Postle stated, "I tried to put on a brave face for Mr. Randazza, but I found his emails very intimidating, and they have caused me to worry about the reprisals I will face from Mr. Randazza because I angered him with my testimony."[18] Mr. Postle also stated, "I am not represented by an attorney, and I fear that Mr. Randazza is going to use the legal system to pursue a personal vendetta against me."[19]

## ARGUMENT

## I.    Mr. Randazza Intimidated a Witness with Threats of Criminal Prosecution and Civil Litigation.

"[W]arnings concerning the dangers of perjury cannot be emphasized to the point where they threaten and intimidate the witness into refusing to testify." *Johnson v. State,* 208 S.W.3d 478, 503 (Tex. App.—Austin 2006, pet. ref'd). As the Austin court explained in *Davis,* judges and attorneys must be especially cautious when admonishing a witness about perjury, noting that "[s]uch admonitions should be administered, if at all, judiciously and cautiously." *Davis v. State,* 831 S.W.2d 426, 438 (Tex. App.—Austin 1992, pet. ref'd). This is "particularly true" when the admonishment is attempted by a lawyer instead of a judge, "because, as here, it generally occurs outside the context of the trial itself, is not a part of the official court

---

[17] *See* https://twitter.com/marcorandazza/status/1378069741055660040
[18] Exhibit 1, Declaration of Mike Postle, p. 1.
[19] *Id.*

proceedings, and is not subject to judicial supervision and control." *Id.* Noting that "[w]itnesses should not be discouraged from testifying freely nor intimidated into altering their testimony," the *Davis* court instructed that "[i]n all these kinds of cases the reviewing court should examine the circumstances under which a perjury or other similar admonition was made to a witness, the tenor of the warning given, and its likely effect on the witness's intended testimony." *Id.*

Here, the repeated hostile emails from Mr. Randazza were not "a warning to a witness made judiciously under the circumstances." *Id.* Indeed, Mr. Randazza's repeated messages, despite Mr. Postle's requests to cease contact, "went far beyond a cautious and judicious warning." *Id.* "First, the conversation between [Randazza and Postle] occurred outside the context of the trial court and the protection of judicial supervision." *Id.* Moreover, "the tenor of [Randazza's] comments were more threatening than a simple warning would need to be." *Id.; see also Steele v. State,* 01-95-00465-CR, 1997 WL 804198, at *14 (Tex. App.—Houston [1st Dist.] Dec. 23, 1997, pet. ref'd) (agreeing with *Davis* court that misconduct occurs when comments are "more threatening than a simple warning would need to be."). This is because, again, "the warnings concerning the dangers of perjury cannot be emphasized to the point where they threaten or intimidate the witness." *Hardy v. State,* 01-89-00490-CR, 1990 WL 19094, at *4 (Tex. App.—Houston [1st Dist.] Mar. 1, 1990, pet. ref'd).[20]

---

[20] In some cases, prosecutors have been given additional leeway when dealing with a recanting witness who changes prior testimony. However, Mr. Randazza is not a prosecutor, and Mr. Postle "was not a recanting witness." *Davis,* 831 S.W.2d at 438.

Mr. Randazza cannot excuse his misconduct by ignorance of Texas law, since a robust body of federal opinions have reached the same conclusion as these Texas courts. *See, e.g., United States v. Evans,* 187 F.3d 643 (8th Cir. 1999) (Noting that "warnings regarding the dangers of perjury cannot be emphasized to the point where they threaten and intimidate the witnesses into refusing to testify."); *United States v. Blackwell,* 694 F.2d 1325, 1334 (D.C. Cir. 1982) (same); *Pynn v. Woodford,* EDCV 06-687-AHM FFM, 2011 WL 1399843, at *13 (C.D. Cal. Mar. 11, 2011) (Misconduct has occurred when an attorney "intimidates or harasses the witness to discourage the witness from testifying, for example, by threatening the witness with prosecution for perjury or other offenses."); Prof. Resp. Crim. Def. Prac. 3d § 16:19, Threats of suit or criminal charges if witness testifies ("It is improper for a lawyer to threaten a witness with suit or perjury or other criminal charges if the witness testifies.") (collecting cases). Under this caselaw, Mr. Randazza's emails were not a "constitutionally permissible 'mere warning' about the dangers of committing perjury." *United States v. Modisett,* 3:14-CR18-1 (JRT), 2017 WL 74698, at *2 (D.N.D. Jan. 5, 2017). Instead, Mr. Randazza's emails contained direct accusations of perjury along with promises that he would act against Mr. Postle, and the threats were repeated even after Mr. Postle demanded Randazza cease contact.

A similar situation arose in *State v. Howe,* in which a family court attorney made statements "to threaten both civil suit and a criminal charge" against a witness. *State v. Howe,* 247 N.W.2d 647, 654 (N.D. 1976). The court noted that the "circumstances

present imparted both an intention and an ability that would justify apprehension on the part of the recipient of the threat." *Id.* The same apprehension is present for Mr. Postle, an unrepresented person, who is facing repeated threats that Mr. Randazza, a licensed attorney, will cause criminal and civil proceedings against him. In addition, the court in *Howe* discussed the importance of the surrounding circumstances. For instance, *Howe* involved an angry communication made after the witness gave adverse testimony:

> [T]o determine whether a threat was made, the phone call must be examined in the context in which it was made. Howe was admittedly angry at the time the call was made. Mrs. Rohde had testified against her son, Howe's client, earlier that day in the juvenile hearing. These circumstances would justify apprehension on the part of a reasonable person receiving such a call. As counsel for both parties correctly pointed out, it matters not whether Mrs. Rohde was actually apprehensive or felt threatened; rather, the issue is whether the circumstances would justify apprehension on the part of the recipient.

*Id.* at 655. Here, Mr. Randazza was clearly angry in his emails, and Mr. Postle indicated that he felt threatened and repeatedly asked Mr. Randazza to cease contact. Under these circumstances, Mr. Randazza's actions were highly improper and potentially in breach of criminal witness tampering statutes.

## CONCLUSION

Mr. Randazza's threatening conduct towards Mr. Postle is perfectly consistent with his long record of questionable conduct. It is obvious that Mr. Randazza's

harassment of this witness must cease, and it is equally obvious that Mr. Randazza's

admission in these lawsuits would lead to further similar transgressions.

Respectfully submitted,

**KASTER LYNCH FARRAR & BALL, LLP**

MARK D. BANKSTON
State Bar No. 24071066
WILLIAM R. OGDEN
State Bar No. 24073531
1117 Herkimer
Houston, Texas 77008
713.221.8300 Telephone
713.221.8301 Fax

9

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 2, 2021 the forgoing document was served upon all counsel of record via electronic service.

_____

MARK D. BANKSTON

EXHIBIT 1

## DECLARATION OF MIKE POSTLE

STATE OF _California_ §
§
_Sacramento_ COUNTY §

I, Mike Postle, declare under penalty of perjury that the following declaration is true and correct and based upon my personal knowledge:

1. My name is Mike Postle. I am over the age of 18 and competent to make this declaration.

2. I provided a declaration to attorney Mark Bankston in which I accurately described an abusive phone call with attorney Marc Randazza.

3. In the week after my declaration was submitted in Texas, Mr. Randazza began contacting me directly through email about that declaration.

4. I have attached to this declaration true and correct copies of several emails Mr. Randazza sent which greatly disturbed me, including emails concerning my testimony and threats of legal action.

5. I tried to put on a brave face for Mr. Randazza, but I found his emails very intimidating, and they have caused me to worry about the reprisals I will face from Mr. Randazza because I angered him with my testimony.

6. I am not represented by an attorney, and I fear that Mr. Randazza is going to use the legal system to pursue a personal vendetta against me.

Executed on August 1, 2021.

_(signature)_

MIKE POSTLE

July 29, 2021 email that I received from Marc Randazza



July 29, 2021 email I received from Marc Randazza (cont.)

## SERVICE OF COURT DOCU...

injunctions preventing the use of illegally obtained information. Cal. Penal Code § 637.2(b).

It is my intention to file a lawsuit against you for violation of Cal. Penal Code § 637.2.

However, I am willing to grant you 24 hours in which to try to resolve this without filing suit against you.

You may feel free to call me to discuss. I do not consent to recording the call unless we discuss that before the recording begins.

July 29, 2021 email that I sent in response to Marc Randazza



Mr. Randazzal,

My email to you was a bit of hyperbole. I assume that you are referring to this section:

"I don't think your correspondence has been very professional, it's clearly not your style to be professional based on re-listening to the two calls we've had thus far so I wont personally hold it against you. I forgot that you mentioned to me in our first call that you didn't want to be made into a clown thanks to Brill, and I'm still in awe over how you treated Ms Merrill on the second call. So unless it is court business, or you'd actually like to talk about mutual respect, I don't see a reason for you to contact me."

My goal, was to discover if you would admit to speaking to me and Ms Merrill so terribly. Since in your filed court response you included a statement from your staff confirming that you had in fact cursed and disparaged us, I'm done with it.

But no, no one recorded you. I just make sure I take notes anytime I'm talking to anyone who's capable of lying or who threatens me with getting personal in email, like you did with me, having both doxed me online, and republishing a defamatory video where your client asked my ex to lie for hers and your gain.

4

July 29, 2021 email I received from Marc Randazza



**Marc John Randazza, JD, MAMC, LLM• | Randazza Legal Group**
2764 Lake Sahara Drive, Suite 109, Las Vegas, NV 89117
30 Western Avenue, Gloucester, MA 01930
2 S Biscayne Boulevard, Suite 2680, Miami, FL 33131
Tel: 702-420-2001 | Email: mjr@randazza.com
Firm Offices - Las Vegas | Miami | New England

July 29, 2021 email that I sent to Marc Randazza



.ıl Verizon LTE ⚡    ⚠ 9:22 PM    ✈ 37% ⚡

‹ Sent    SERVICE OF COURT DOCU...    ⌄ ⌄

As I have said before, I find you beyond unprofessional and yet again, there's no need to have contact with you unless it is specifically for court business. These threats.. are NOT court business.

Are you saying that on a professional call, as a court officer, when speaking to a lady from a victim's advocacy non-profit, you did scream that she was a fucking bitch and a fucking liar, just not a "cunt"? Classy.. and many others would agree if they have to know.
Anyway, I didn't lie, you did say that and since the "3rd party" that you claim was in your office is the same 3rd party you claim never had a GoFundMe with Brill on your behalf, who works with you, I don't think a court is going to give much credence to that claim, especially to someone...

Frankly, I don't know why you are still focusing on me since the judge said that your "services" were worth less than $27k and you received over $27k from the GoFundMe you and your office set up to cover those fees.

There's really no reason to contact me other than to continue harassing and threatening me.
You've admitted that "because things have been made personal", and that "it's a big mistake on my part" it's very clear why you're still coming at me.

You can be done with me, or you can keep stubbornly coming at me out of personal anger with a clear vendetta. But every cause will have an effect. So...
At this point, I don't really care what you.

🗑    📁    ↩    ✎

July 29, 2021 email that I received from Marc Randazza



I absoutely said "Fucking liar" -- "bitch" or "cunt," no. Not a chance.

It is "court business" when you lie in a sworn statement. If you find no functional difference between calling someone a "fucking liar" or a "fucking bitch" or "fucking cunt" , you're entitled to that opinion. What you are not entitled to is to perjure yourself and lie about which of the three I did say. What I am entitled to do is to take action when someone submits a false statement, under penalty of perjury.

July 29, 2021 email that I received from Marc Randazza (cont.)



statement, under penalty of perjury.

And I am not going to let that rest - however, I will let it rest on one condition - that you admit that it was not true. and I won't use that against you. You need do nothing more than send a letter to the court stating that you made an error. That indeed, I did say "fucking liar" -- I will never deny that. But, I certainly did not call her a "fucking bitch" nor a "fucking cunt" (There is a non zero chance that I *thought* those things, but they never came out of my mouth)

I'm not even sure what you thought you had to gain by lying about that. But, I will not tolerate the lie, and I won't let this go. So, your move. You can end it by telling the truth. Or, you can dig in ... and enjoy the "effect" as you put it.

8

July 29, 2021 email that I sent to Mr. Randazza



Re: SERVICE OF COURT DOCUMENTS | Postle v. Brill, et al. | 34-2020-00286265

If you contact me again on this matter, I will forward these emails to the court in Texas. I'm sure harassing and threatening someone who made a complaint against you is no big deal to you, but the court might feel otherwise.

I know that this is all retaliatory because your record is under review in the case in Texas. I guess with the mountain of evidence against you and all of the people and documents showing your "honesty" and "integrity" (that is sarcasm in case we aren't clear) you figure that I don't have a lawyer so you can intimidate me. Well you can't.

You said what you said. If you want to take me to court for perjury, well you just go right ahead. But until a summons hits my mail box, don't contact me again.

On Jul 29, 2021, at 4:23 PM, Marc Randazza <mjr@randazza.com> wrote:

June 15, 2021 email that I received from Marc Randazza



June 15, 2021 email that I received from Marc Randazza (cont.)



**As far as representation, yes, you have every right to an attorney. You had one. You had a really good one. My issue with HONR is that it's involvement in this case has nothing to do with you – but has to do with a collateral attempt to influence another case. And, Ms. Merrell most certainly was trying to "play lawyer" for you. No, that's not permitted.**

**Don't lie that you have any interest in "mutual respect." We tried that route. You decided to make it personal with me.**

**That wasn't smart.**

11

8/31/2021 4:29 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-18-001835
Alexus Rodriguez

D-1-GN-18-001835

| | | |
|---|---|---|
| NEIL HESLIN | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| FREE SPEECH SYSTEMS, LLC, and | § | 459 th DISTRICT COURT |
| OWEN SHROYER, | § | |
| *Defendants* | § | |

D-1-GN-18-001842

| | | |
|---|---|---|
| LEONARD POZNER AND | § | IN DISTRICT COURT OF |
| VERONIQUE DE LA ROSA | § | |
| *Plaintiffs* | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | 459 th DISTRICT COURT |
| AND FREE SPEECH SYSTEMS, LLC, | § | |
| *Defendants* | § | |

D-1-GN-18-006623

| | | |
|---|---|---|
| SCARLETT LEWIS | § | IN DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| ALEX E. JONES, INFOWARS, LLC, | § | |
| AND FREE SPEECH SYSTEMS, LLC, | § | 459 th DISTRICT COURT |
| *Defendants* | § | |

## ORDER DENYING MOTION FOR PRO HAC VICE ADMISSION OF MARC J. RANDAZZA

The Court, having reviewed the Opposed Motion for *Pro Hac Vice* Admission of Marc J.

Randazza and the Opposed Motion for *Pro Hac Vice* Admission of Marc J. Randazza by

Resident Attorney, finds that the Motions should be DENIED and thus DENIES Marc J.

Randazza's *pro hac vice* admission to this Court.

IT IS SO ORDERED.

SIGNED on this the 31st day of August, 2021

Presiding Judge
Maya Guerra Gamble

**EXHIBIT #4  LIST OF CREDITORS**

I have included only basic information here to support my defense that the petitioner fails to meet the requirements under the numerosity rule, which requires me to have fewer than 12 creditors. I can provide the court with full accounting if necessary, but as Mr. Randazza has previously doxed me, I am concerned for my identity should I list all account numbers here now.

1. Citi/AAdvantage (American Airlines)
Credit limit $14,000
Acct number ending in 9457

2. Synchrony - CareCredit
CL-$8000
Acct # ends in 8884

3. Southwest
CL-$8000
Acct ends in 7724

4. Wells Fargo
CL-$5500
Acct ends in 2614

5. Amazon
CL-$4400
Acct ends in 8611

6. Discover
CL-$4100
Acct ends in 1528

7. First Bankcard
CL-$2500
Acct ends in 3623

8. Capital One
CL-$2000
Acct ends in 8141

9. WalMart
CL-$1800
Acct ends in 4220

10. Macy's
CL-$1500
Acct ends in 9894

11. American Express
CL-$1000
Acct ends in 1-91000

12. Fortiva
CL-$5000
Acct ends in 6521

13. Genesis
CL-$4000
Acct ends in 1450

14. Debtsy
CL-$300
Acct ends in CNS1

15. Ford Motor Credit
Debt - $18,111
Acct ends - 1550

16. Eric Bensamochan Legal Firm
Debt – Legal Fees
$26,980

17. Mark Randazza Legal Firm
Debt - Legal Fees
$ 27,745